ORIGINAL

Approved: _/s/ Daniel Nessim_
Peter J. Davis
Daniel G. Nessim
Assistant United States Attorneys

Before:  HONORABLE KEVIN NATHANIEL FOX
United States Magistrate Judge
Southern District of New York

- - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA           :   **19MAG11737**

             - v. -                :   **COMPLAINT**

MARIO ALBERTO RAMOS,               :   Violation of
JOSE LUIS DISLA MELO,              :   21 U.S.C. § 846
LORENZO MACIEL SOLORIO, and        :
CARLOS ALBERTO RAMIREZ,            :   COUNTY OF OFFENSE:
                                   :   BRONX, NEW YORK
              Defendants.          :

- - - - - - - - - - - - - - - - - x

SOUTHERN DISTRICT OF NEW YORK, ss.:

WILLIAM BLANCO, being duly sworn, deposes and says that he is a Special Agent with the Drug Enforcement Administration ("DEA") and charges as follows:

COUNT ONE
(Narcotics Conspiracy)

1. In or about December 2019, in the Southern District of New York and elsewhere, MARIO ALBERTO RAMOS, JOSE LUIS DISLA MELO, LORENZO MACIEL SOLORIO, and CARLOS ALBERTO RAMIREZ, the defendants, and others known and unknown, intentionally and knowingly did combine, conspire, confederate, and agree together and with each other to violate the narcotics laws of the United States.

2. It was a part and an object of the conspiracy that MARIO ALBERTO RAMOS, JOSE LUIS DISLA MELO, LORENZO MACIEL SOLORIO, and CARLOS ALBERTO RAMIREZ, the defendants, and others known and unknown, would and did distribute and possess with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

3. The controlled substance that MARIO ALBERTO RAMOS, JOSE LUIS DISLA MELO, LORENZO MACIEL SOLORIO, and CARLOS ALBERTO RAMIREZ, the defendants, conspired to distribute and possess with intent to distribute was 400 grams and more of mixtures and substances containing a detectable amount of fentanyl, in violation of Title 21, United States Code, Section 841(b)(1)(A).

(Title 21, United States Code, Section 846.)

The bases for my knowledge and for the foregoing charge are, in part, as follows:

4. I am a Special Agent with the DEA and I have been personally involved in the investigation of this matter. This affidavit is based upon my personal participation in the investigation of this matter, and my conversations with law enforcement officers, law enforcement employees, and witnesses, as well as a review of documents. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

5. Based on my participation in this investigation, including surveillance I conducted, my review of documents, and my conversations with other law enforcement officers, I have learned, in substance and in part, that:

a. I have been involved in investigating a Mexico-based drug trafficking organization ("DTO") that, among other things, transports kilogram quantities of narcotics across the United States in tractor trailer trucks. As part of this investigation, law enforcement has obtained judicially authorized location tracking warrants and conducted surveillance, among other things.

b. Through location tracking warrants, law enforcement identified the location of a tractor trailer (the "Truck") driven by individuals later identified as MARIO ALBERTO RAMOS ("RAMOS") and CARLOS ALBERTO RAMIREZ ("RAMIREZ"), the defendants. According to location data, on or about December 13, 2019, the Truck began driving from California to the New York City area. After the Truck arrived in New Jersey, at approximately noon on or about December 15, 2019, I and other law enforcement officers began following the Truck. The Truck parked at a lot in New Jersey (the "Lot").

c. At approximately 2:30 p.m. on or about December 15, 2019, an SUV arrived (the "SUV") at the Lot. The SUV was a livery car transporting a passenger later identified JOSE LUIS DISLA MELO ("DISLA MELO"), the defendant. The SUV parked behind a building located at the Lot. RAMIREZ then exited the Truck and walked behind that building carrying a red bag (the "Red Bag"). RAMIREZ then emerged from behind the building empty handed. The SUV then drove away from the lot.

d. Law enforcement followed the SUV for several minutes before conducting a traffic stop. As law enforcement pursued the SUV, DISLA MELO could be observed rummaging around in the back seat. When they conducted the traffic stop, law enforcement observed DISLA MELO sitting in the back seat of the SUV, with the empty Red Bag and a rolling suitcase (the "Suitcase") nearby him. Law enforcement obtained consent to search the SUV from the SUV's driver. A narcotics detection canine alerted at the rear passenger door of the SUV, nearby where the Red Bag and Suitcase were located, signaling the presence of narcotics. A search of the Suitcase revealed nine approximately one-kilogram bricks of a white powdery substance (the "Suitcase Bricks"). DISLA MELO was placed under arrest.

e. Law enforcement continued surveilling the Truck at the Lot. A pickup truck (the "Pickup") driven by an individual later identified as LORENZO MACIEL SOLORIO ("MACIEL SOLORIO"), the defendant, arrived and parked at the Lot. RAMOS then exited the Truck, carrying a gray bag (the "Gray Bag"). RAMOS walked to the Pickup and entered the passenger-side door of the Pickup and got into the vehicle with the Gray Bag. Law enforcement then approached the Pickup as RAMOS exited the vehicle. Law enforcement observed RAMOS carrying a different bag (not the Gray Bag) as he exited the vehicle, containing what appeared to be bulk cash, which, based on the officers' training and experience, was consistent with RAMOS and MACIEL SOLORIO having just conducted a narcotics transaction involving the exchange of drugs for money.

f. Law enforcement then detained RAMOS and MACIEL SOLORIO. A subsequent search of the Pickup resulted in the recovery of the Gray Bag, which contained approximately one kilogram of pills that, based on my training and experience, appeared to be fentanyl pills (the "Pickup Pills"). RAMOS and MACIEL SOLORIO were placed under arrest.

g. Law enforcement then advised RAMOS of his *Miranda* rights. RAMOS waived those rights and told law enforcement, in substance and in part, that additional narcotics were located in the Truck. RAMOS then led law enforcement to 20

approximately one-kilogram bricks of a white powdery substance (the "Truck Bricks") located in the Truck, and law enforcement seized those narcotics. Law enforcement also found approximately $100,000 in cash in the truck.

        h.   Law enforcement subsequently located RAMIREZ in the vicinity of the Truck, and placed RAMIREZ under arrest.

        i.   Law enforcement then advised RAMIREZ of his *Miranda* rights. RAMIREZ waived those rights and told law enforcement, in substance and in part, that RAMOS had directed him to take the Red Bag to the SUV, and that RAMIREZ could feel the bricks in the bag and believed that they were kilogram quantities of narcotics.

        j.   Law enforcement advised DISLA MELO of his *Miranda* rights. DISLA MELO waived those rights and told law enforcement, in substance and in part, that DISLA MELO had traveled in the SUV from the Bronx to the Lot in New Jersey at the direction of another individual ("CC-1"). CC-1 told DISLA MELO that CC-1 would give DISLA MELO drugs and money in exchange for picking up narcotics in New Jersey. DISLA MELO was to return to the Bronx following the transaction.

        k.   Law enforcement advised MACIEL SOLORIO of his *Miranda* rights. MACIEL SOLORIO waived those rights and told law enforcement, in substance and in part, that MACIEL SOLORIO had been directed by an individual based in Mexico ("CC-2") to travel to the Lot to purchase what MACIEL SOLORIO understood to be pills.

        l.   License plate reader records indicate that in traveling to the Lot, the Pickup drove through the Southern District of New York.

        m.   Law enforcement subsequently field tested a portion of the Suitcase Bricks. The field test returned a partial match for the presence of cocaine. Based on my training and experience, this field test commonly does not return results for fentanyl, and a substance that actually contains fentanyl often will field test as a partial match for cocaine. Based on the results of this field test, my training and experience, the facts set forth above, and observation of the substances contained in the Suitcase Bricks and Truck Bricks, I believe that the Suitcase Bricks and Truck Bricks contain fentanyl.

WHEREFORE, deponent respectfully requests that MARIO ALBERTO RAMOS, JOSE LUIS DISLA MELO, LORENZO MACIEL SOLORIO, and CARLOS ALBERTO RAMIREZ, the defendants, be imprisoned or bailed, as the case may be.

_____
WILLIAM BLANCO
Special Agent
Drug Enforcement Administration

Sworn to before me this
16th day of December, 2019

_____
THE HONORABLE KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK